UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUIS JOSE CORONA-MEDINA (A-Number: 220-567-835),<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT,<br><br>Respondent. | Case No. 1:26-cv-7409-TLN-JDP<br><br>FINDINGS AND RECOMMENDTIONS |

Petitioner Eduis Jose Cornoa-Medina entered the United States in August 2021 and was released by immigration authorities into the United States on his own recognizance. Petitioner was re-detained by ICE on August 5, 2026, when it was "attempting to locate illegal aliens" in the Dallas, Texas area. Proceeding pro se, petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner entered the United States on August 14, 2021, and was taken into custody by immigration authorities. ECF No. 1 at 6; ECF No. 6 at 9. On September 20, 2021, the government released him on his own recognizance into the United States. ECF No. 6 at 9. Petitioner qualified for temporary protected status, and, on June 26, 2024, an immigration judge dismissed his removal case on that basis. *Id.* Petitioner has a real ID compliant driver's license.

ECF No. 6 at 8. While in the United States, petitioner has obtained a steady residence, a work permit, and a social security number. ECF No. 1 at 6. He has been a driver for Walmart and paid his taxes. *Id.*

There is no allegation or evidence that petitioner has violated the terms of his own recognizance release. Petitioner has no criminal history. ECF No. 6 at 9. On August 5, 2026, ICE was "attempting to locate illegal aliens" in Dallas, Texas, and came across petitioner. *Id.* at 8. ICE was conducting database checks and identified a vehicle as petitioner's car. *Id.* ICE watched the vehicle, saw petitioner get into it, and approached it in "government issued vehicles with police/emergency lights." *Id.* ICE believed that petitioner was "illegally present in the United States" despite his receipt of TPS, the dismissal of his removal case, and his release into the United States by immigration authorities. *Id.* Because petitioner's removal case had been dismissed, he did not have a pending immigration court date. *Id.* Petitioner asserts that he was never provided an arrest warrant or a notice to appear. ECF No. 1 at 6. ICE re-detained petitioner without any pre-deprivation hearing. *Id.* Petitioner has not received a bond hearing. *Id.* at 2.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## Analysis

Petitioner claims that his re-detention without consideration of whether he poses a flight

risk or a danger violates the Due Process Clause.[1] ECF No. 1 at 6. Respondent has moved to dismiss on three grounds: (1) that petitioner has not met the standard for granting habeas relief; (2) that petitioner is subject to removal; (3) that petitioner is lawfully detained; and (4) that the habeas petition is moot. ECF No. 6 at 2-4. Each of respondent's arguments fails to address the central issue—that petitioner asserts that his protected liberty interest was terminated without procedural due process—and accordingly, I recommend that the motion to dismiss be denied.[2]

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions

---

[1] Petitioner's pro se filing is entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *1 n.1 (E.D. Cal. Apr. 28, 2026) (applying liberal construction to pro se immigration habeas filing).

[2] Even immigrants who are lawfully detained under the appropriate statute and who are subject to removal possess constitutional rights against being re-detained without procedural due process. "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-0379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)). Petitioner has alleged that he was re-detained in violation of his procedural due process rights. ECF No. 1 at 6. Nothing has occurred to render that interest moot. Importantly, petitioner is still in respondent's custody. For these reasons, I recommend that the motion to dismiss be denied.

not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Courts in this Circuit have found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). I find that petitioner has a protected liberty interest in his continued release.

Immigration authorities paroled petitioner into the United States in September 2021. ECF No. 6 at 9. Petitioner obtained TPS status, employment authorization, a social security number, and a driver's license. ECF No. 1 at 6. Petitioner formed "enduring attachments of normal life" over the almost five years between his parole and present re-detention. *See Morrissey*, 408 U.S. at 482.

I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the almost five years between his release and present re-detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner into the United States, respondent necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the

risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release as "[e]very minute [he is] detained violates [his] constitutional rights." ECF No. 1 at 7. Respondent does not discuss the issue. *See* ECF No. 6.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the

necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, there is no evidence, and respondent has presented no argument, suggesting that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. Petitioner was getting into his car when ICE agents arrested him for being, in their assessment, "illegally present in the United States." ECF No. 6 at 8. He has no criminal history and there is no allegation of any misconduct or violation of his release into the United States. *Id.* at 9. Respondent does not argue that petitioner is a danger or a flight risk. *See* ECF No. 6.

Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

Accordingly, I recommend that petitioner be released.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The motion to dismiss, ECF No. 6, be DENIED.

2. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

3. Respondent be ordered to immediately release petitioner (A-Number: 220-567-835) from its custody on the same conditions as his prior release. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than

seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

4. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: October 5, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE